1IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBRA L. LATIMER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04CV700-M |
| ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Debra L. Latimer ["Latimer"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. # 1, p. 1). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision is supported by substantial evidence and is hereby affirmed.

**I. PROCEDURAL BACKGROUND AND FACTS**

Latimer, who was 38 years old when she first applied for disability insurance and supplemental income benefits in March 1996, alleged an onset date of 22 December 1995 (R. 89 ). Latimer alleges that she has been unable to work since then, primarily as a result of mental illness, namely depression and panic disorder, which she classified simply as "nerves" on her disability report. (R. 97). She is a high-school graduate, is certified as a nursing and physical therapy assistant, and has received training as an EKG technician. (R.

101).  She has previously worked as a "Wire Harness Assembler . . ., Circuit Board Assembler . . ., Nursing Assistant . . ., and Cashier . . .." (R. 314).

In her own words, Latimer contends that she is no longer capable of maintaining employment because her depression and panic disorder prevent her from being able to sleep and concentrate (R. 51).  She does not understand what people say (R. 381).  She gets "hysterical" and is "afraid of people." (R. 51).  She does not "get along with people very good [sic]." (R. 51).  Although she has not been physically violent, she is prone to lash out verbally at those around her (R. 53).  As she testified, "I want to be in my own little world at home with the blinds closed with my little dog . . .." (R. 385).

A simplified version of the complex procedural history of this case follows: Latimer's petition was denied initially (R. 68), upon reconsideration (R. 75), and after an evidentiary hearing before an Administrative Law Judge ["ALJ"], D. Kevin Dugan (R. 17-29).  The Appeals Council denied Latimer's request for review of the ALJ's decision (R. 5), and Latimer appealed to this court.  Judge Susan Russ Walker reversed the Commissioner's decision and remanded the case for a rehearing. (R. 321-339).[1]  Latimer now asks this court to review the opinion issued as the result of the rehearing. (R. 297-319).[2]

---

[1] Judge Walker determined that Judge Dugan failed to address the opinions or records of Latimer's treating physicians or provide any explanation for his disregard. (R. 330).  In addition, the ALJ had not assessed the severity of Latimer's well-documented impairments.  (R. 333).  Judge Walker also denied Latimer's request for remand to allow the ALJ to consider a physical capacities evaluation completed by her treating physician only after the ALJ had issued his decision in April 1998. (R. 337).  Key to Judge Walker's denial was the fact that the physician had not related his assessment back to a date prior to the ALJ's decision. (R. 337, citing *Caulder v. Bowen*, 791 F.2d 872, 87-78 (11th Cir. 1986)).

[2] While Judge Dugan's decision regarding Latimer's 1996 application was wending its way through the appeals process, she filed another application for benefits, this time alleging an onset date of 1 May 1998. (R. 530).  That application was also denied initially and upon reconsideration. (R. 509; 519-522).  After an evidentiary hearing before

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[3] This is true despite the fact that "[s]ubstantial evidence may even exist contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).

## III.   DISCUSSION

### *A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must

---

a different ALJ, Steven L. Carnes, Latimer received a fully favorable decision in November 2001. (R. 418). Judge Carnes also presided over the rehearing.

[3]In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

prove that he is disabled. *See* **20 C.F.R. § 416.912 (2004)**. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A) (2004)**.

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* **20 C.F.R. § 416.920**. The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). The steps are as follows:

   a.   If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

   b.   If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

   c.   If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent

to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

d. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

e. If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. § 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

B.      *Application of the Standard*

On rehearing, Administrative Law Judge Carnes ultimately determined that Latimer was not under a disability prior to 1 May 1998, thus affirming the original conclusion in this case.  It is not necessary to discuss all of Judge Carnes' findings, however, because Latimer appeals the decision on fairly narrow grounds, namely: (1) his decision not to assign controlling weight to a letter her treating physician wrote on her behalf three days after the rehearing; (2) his apparent failure to take into consideration certain records from treatment Latimer received during a brief hospital stay, including the opinion of the psychiatrist overseeing her care; and (3) his decision to assign great weight to the non-examining medical expert who testified at the rehearing.

1.      **The Law Regarding a Treating Physician's Opinion**

A treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . .." **20 C.F.R.§§ 404.1527(d)(2)(I); 416.927(d).**  When the ALJ determines that the treating physician's opinion is not entitled to controlling weight, he or she must take the following factors into consideration when deciding what weight to give the opinion:

(1) length of treatment relationship and frequency of examination;

(2) nature and extent of the treatment relationship;

6

(3) the supportability of the opinion given;[4]

(4) the consistency of the opinion;

(5) whether the treating physician is a specialist in a relevant area; and

(6) any other factors the claimant raises that "tend to support or contradict the opinion."

**§§ 404.1527(d)(2)-(6); 416.927 (d)(2)-(6)**.

At the very least, in the Eleventh Circuit, treating physicians' opinions are accorded "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when, for example, "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241. The ALJ must state his or her reasons for the weight given the opinion. **§ 404.1527(d)(2); 416.927(d)(2).**

---

[4] The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. § 404.1527(d)(3).

### 2. Latimer's Alleged Treating Physicians' Opinions

Latimer raises arguments regarding only the opinions of Dr. Fernando Lopez ["Lopez"] and Dr. Timothy L. Reid ["Reid"] (Doc. # 20, pp. 1-13). The court limits its discussion accordingly except where otherwise warranted.

#### a. Lopez' Opinion

Latimer first visited East Central Mental Health and Mental Retardation, Inc. ["ECMH"], where Lopez works as a psychiatrist, in March 1996. (R. 732). Although Latimer testified that Lopez was her treating physician (R. 380), and Judge Carnes did not dispute this fact, her medical records do not make clear whether Lopez met with Latimer more than three times during the relevant time period.[5] (R. 171-82; 665-733). The notes from those examinations provide little insight into Latimer's condition (R. 171-73), as do the notes of other ECMH therapists.[6] (R. 171-82; 665-733).

---

[5] Unless otherwise stated, the facts and conclusions discussed relate to the time period at issue in Latimer's initial application, to wit, 22 December 1995 through 30 April 1998. Lopez' letter of 12 January 2004 suggests he had met with her several times during that period, but he does not provide any specific dates and does not explicitly state whether he met directly with her. (R. 364-65). Her records indicate an in-person examination by Lopez on 8 April, 8 July and 7 October 1996. (R. 171-73).

[6] Other than noting her mood and appearance at the time of the session, the notes, for the most part, simply relay information provided by Latimer herself. (R. 171-82; 665-733). This type of information is of limited value to an objective records reviewer charged with evaluating a person's ability to work, particularly when the person's credibility is in question. Good examples of the kind of information that frequently proves more useful can be found in notes from the clinical director of ECMH, who made the following observation in August 1998:

> Despite client's compliance with keeping appointments and her reported med. compliance, she has made little, if any, progress in treatment consistently [sic] reporting some new complaint or problem, and finding excuses for not making progress. Judging from the number of referrals from attorneys that are charted, she just seems intent on getting disability!

Lopez did conduct a thorough consultative exam.[7] (R. 178-82). As with the therapy notes, however, the five-page report provides limited objective information or insight into Lopez' own thoughts about Latimer's condition. (R. 178-82). He did note the following, however:

> MENTAL STATUS: Ms. Latimer is a mildly obese Caucasian female with adequate development. She casually dressed in blue jeans, pink t-shirt, and boots. Her grooming was adequate. Throughout the examination, Ms. Latimer continually paced the room wringing her hands. Her characteristics of speech were unremarkable as was speed and quantity. Her stream of thought and association appeared logical. . . . Throughout the examination, her affect was dysphoric with a large amount of anxiety noted. Her affect did not appear to be appropriate to the content of thought and conversation. Her relationship with the examiner was poor. Her mood was reported to be depressed. Symptoms of depression include sleep disturbance (Initial Insomnia), loss of energy, anhedonia, crying spells, and psychomotor retardation. Suicidal and homicidal ideations were denied.[8]

(R. 181)

After describing Latimer's responses to a number of clinical tests,[9] Lopez noted: "Her

---

(R. 670). In April 1999, the director again observed:

> It should be noted that client did not return to this agency until eight (8) days before their [sic] 4-22-99 request for information was obtained from DDU. New treatment plan, therefore, has not been developed. The 4-14-99 progress note, however, indicates there is not likely to be a change in diagnosis. It seems quite evident that this client is continuing and persistent in her attempt to get disability, instead of seeking training and/or employment!

(R. 667).

[7] While he may have personally examined Latimer at that time, the report is written in such a way that suggests otherwise.

[8] Restatements of Latimer's subjective statements have been excised.

[9] SENSORIUM AND COGNITIVE FUNCTIONING: Ms. Latimer was alert and oriented in 3 spheres. She was unable to perform serial 7 subtractions from 100. She was able to perform serial 4 additions from 1. M[s]. Latimer correctly calculated 3 out of three single-digit multiplication problems and 1 out of two

9

level of intellectual functioning appears to be in the average to low average range. She has adequate insight into her current situation. . .. Ms. Latimer's judgment appears adequate at this time. She will need assistance with any awarded funds." (R. 182).

On 12 January 2004, three days after the rehearing at issue, Lopez wrote a letter on Latimer's behalf. (R. 364-65). That letter, which is central to Latimer's claims on appeal, stated that Latimer "has been totally disabled due to her two mental disorders since at least March 1996." (R. 364). Lopez then referred to the residual functional assessment he completed in June 1998, in which he "stated that she would have moderately severe limitations in responding appropriately to supervision, to co-workers, and to customary work pressures", and asserted, "When I initially evaluated Ms. Latimer in March 1996, her

---

simple word problems. When asked the similarity between an orange and a banana, she responded, "they're not." When asked the similarity between a dog and a lion, she responded, "both are animals." When asked to interpret the proverb about glass houses, she responded, "If you plan to hurt somebody, don't do it. Sweep off your own doorstep first." When asked to interpret the proverb about spilled milk, she responded, "I don't know." When asked what she would do with an envelope that she found in the street what [sic] was sealed, addressed, and stamped, she replied, "mail it." When asked what she would do if she saw thick smoke coming from the window of a neighbor's home, she replied, "call to see if there was a fire." She was unable to give details of current news items. She correctly identified the current president. She incorrectly identified the preceding president. She identified five large cities to be, "Orlando, Atlanta, Troy, Daytona, and Miami." She identified five famous people to be, "Billy Ray Cyrus, Linda Lovelace, Bob Hope, Bing Crosby, and George Jones." She indicated that there are 52 weeks in a year. She recited 4 digits forward and 3 in reverse. She recognized three objects and recalled 0 out of three after a five minute interval. She was able to give a detailed description of her trip to the examination today. She could describe what she had eaten in the last 24 hours. She was able to give dates of birth of significant people in her life. She knew the age at which she left school. She was able to give dates of previous employment.

condition was much worse than in June 1998." (R. 364). The remainder of his letter follows, in relevant part:

> During my treatment of her between March 1996 and June 1998, she responded to treatment and medications and displayed some improvements and some exacerbations, but generally her mental condition during this period was worse than or approximately the same as I related in my June 1998 functional assessment.
>
> Ms. Latimer's mental limitations have been so severe from at least March 1996 to the present time that she has not been able to be employed on a competitive basis.
>
> Ms. Latimer has been attended by myself and other psychiatrists and psychologists, and she has sought treatment regularly for examinations and medication refills over the last seven years.
>
> In reviewing her records, I notice that Dr. Marcelo Anayas ["Anayas"] stated in September 1997 that it was his opinion that Ms. Latimer's mental limitations would prevent her from maintaining employment. I agree with Dr. Anayas' opinion. Ms. Latimer's ability to establish or maintain effective or favorable relationships with people is considerably impaired and her symptoms prevent competitive employment. My treatment and evaluations of Ms. Latimer confirm that her ability to establish or maintain relationships with people is severely impaired due to his [sic] two mental disorders[,] and her symptoms caused by these mental disorders would prevent her from being able to perform any work in a competitive work environment.
>
> Ms. Latimer has been able to maintain a considerably impaired life since March 1996 by performing minimal activities and not being around crowds or unknown people.
> Please find enclosed a copy of my Residual Functional Capacity statement dated June 15, 1998 as to her mental abilities. His [sic] mental restrictions have been at this level since March 1996.
>
> In summary, it is my professional opinion that Ms. Latimer has

11

> been and remains restricted and unable to function at a productive level of work for gainful competitive employment on a sustained basis. She has probably been totally disabled and unable to perform substantial gainful employment due to her Dysthymic disorder and Panic disorder with Agoraphobia since at least March 1996.

(R. 364-65).

Latimer argues that Judge Carnes should have given Lopez' opinion, specifically the letter he wrote in 2004, controlling weight. Judge Carnes gave the conclusions in the letter only "little weight," however, for the following reasons:

(1) the letter itself does not appear consistent and, thus, reliable;

(2) Lopez' conclusory opinions regarding Latimer's ability to work are not entitled to controlling weight as a matter of law; and

(3) his opinions are not supported by his own notes.

Judge Carnes first points out that Lopez' agreement with Anayas' opinion is contradictory. (R. 312). Dr. Anayas' opinion regarding Latimer's ability to work was based on a diagnosis of schizophrenia.[10] (R. 197). Lopez never diagnosed Latimer with schizophrenia, though. His letter refers only to his diagnoses of "Dysthymic disorder and Panic disorder with Agoraphobia". (R. 365).[11] Thus, it can be reasonably inferred that Lopez

---

[10] "Schizophrenia is a disorder that lasts for at least 6 months and includes at least 1 month of active-phase symptoms (i.e., two [or more] of the following: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, negative symptoms)." AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 298 (4th Ed., text rev., 2004) ["DSM-IV"].

[11] Judge Carnes gave no weight whatsoever to Anayas' opinion. (R. 312). In support of this, he stated, "Dr. Anayas [sic] diagnosis of schizophrenia and opinion that the claimant has 'mental limitations' that prevent employment is so brief and conclusory that it lacks persuasive weight; it is unsubstantiated by any clinical or laboratory findings and it is not accompanied by objective medical evidence." (R. 312). Although Latimer mentions the schizophrenia diagnosis

would have not agreed with Anayas' diagnosis, which is clearly stated on the very same page of his opinion regarding Latimer's ability to work. (R. 197). The fact that Lopez nonetheless agrees with Anayas' conclusion certainly raises the inference that Lopez' letter is incongruous. While reasonable minds may differ in this respect, the inference is also reasonable.

Judges Carnes addressed a second internal contradiction. (R. 313). Noting that Lopez', toward the end of his letter, qualifies "been totally disabled" with "probably," Judge Carnes concludes, "Between the beginning of the letter and the end, Dr. Lopez changes from stating a certainty that the claimant is disabled to stating a probability." (R. 313). Again, although different interpretations are possible, a fair reading of the letter could reasonably lead one to conclude that Lopez' initial certitude was passing.[12]

As further support for discounting Lopez' opinion, Judge Carnes correctly notes that a treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight. ***Watkins v. Schweiker***, 667 F.2d 954, 958 n.1 (11th Cir. 1982) ("That determination is made solely by the Secretary based on medical findings."); *see also* 20 C.F.R. § 404.1527(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Yet much of the strength of

---

(Doc. # 20, p. 9), she raises no arguments with respect to Judge Carnes' decision not to accord Anayas' diagnosis or opinion any weight. Notably, Anayas makes no reference to Schizophrenia or any other mental conditions in his final assessment. (R. 289).

[12]Latimer attempts to undermine Judge Carnes' understanding by noting that Lopez never stated that he was opining with "certainty." (Doc. # 20, p. 9). Latimer consequently concedes that Lopez' initial opinion was less than firm. Furthermore, her argument ignores the linguistic reality that an assertion predicated on "probably" is less unequivocal than the same assertion without the qualifier.

Lopez' letter springs directly from his conclusions regarding Latimer's disability status. Latimer does not argue this point.

Finally, Judge Carnes noted that Lopez' treatment notes contradict his opinion. As Latimer concedes, Lopez' notes indicated that her condition had improved from 1996 to 1998.[13] (Doc. # 20, p. 9). Moreover, his 2004 opinion that Latimer's condition was severe from 1996 to the date of the letter conflicts somewhat with his 1998 assessment, which listed moderately severe impairments at worst.[14] (R. 295-96).

Both assessments conflict to an even greater extent with his 2001 opinion, which noted only two moderately severe impairments (ability to relate to other people and ability to respond to customary work pressures), four moderate impairments, five mild impairments, and no impairment with respect to her ability to "understand, carry out, and remember instructions."[15] (R. 895-96). Although Judge Carnes did not mention it in this context,

---

[13] Latimer argues that this is not a contradiction because "[a]lthough the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." (Doc. # 20, p. 10, citing ***Poulin v. Bowen***, 817 F.2d 865, 875 (D.C. Cir. 1987). The court does not disagree, but in addressing the weight of Lopez' opinion, Judge Carnes was merely pointing out the obvious contradiction between Lopez' statement that Latimer was severely impaired between 1996 through 1998 and his notes suggesting otherwise. He was not resting his ultimate decision on the fact that Lopez' notes indicated periods of improvement. Moreover, Latimer's argument on this point is based largely on a diagnosis of schizophrenia. (Doc. # 20, p. 9). Anayas, not Lopez, diagnosed Latimer with schizophrenia, and Latimer has not challenged Judge Carnes' decision to discount Anayas' diagnosis altogether.

[14] Importantly, Judge Walker determined that Lopez' June 1998 assessment did not relate back to the relevant time period. (R. 336-37). *Supra* note 1.

[15] Latimer attempts to expose a contradiction in Judge Carnes' opinion by noting that he relied on Lopez' 2001 assessment when deciding that Latimer had been under a disability since 1 May 1998. (Doc. # 20, p. 10). While Judge Carnes did note the 2001 assessment in his previous opinion, he did not discuss what weight he accorded Lopez' opinion, and he based his decision on the entire record. (R. 424, 427). One could thus easily argue that Judge Carnes ruled in favor of Latimer despite Lopez' 2001 assessment, which would mean he assigned less than controlling weight to Lopez' opinion then as well, consistent with his present decision. Regardless, Carnes merely pointed out contradictions. He did not suggest that Lopez' 2001 assessment was correct.

Lopez' 1996 assessment quoted earlier in this opinion does not remotely suggest the level of severity that Lopez assigned to Latimer's condition in his letter.

Upon review of the entire record, the court concludes that Judge Carnes' decision to accord Lopez' 2004 opinion only little weight is supported by substantial evidence. Moreover, Judge Carnes methodically and thoughtfully demonstrated good cause.

### b.     Reid's Opinion

Latimer saw Reid on 17 and 21 October 1997 during a brief hospital stay. (R. 599-606). She checked herself into the emergency room of Memorial Hospital West Volusia in Florida. (R. 606). Judge Carnes' opinion neither mentions Reid nor discusses specifically the weight given to his diagnoses. (R. 300-19). Latimer argued that this oversight constitutes legal error. (Doc. # 20, p. 13 ). The court disagrees.

The regulations regarding disability determinations define "treating source" as follows:

> [Y]our own physician, psychologist or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, *an ongoing treatment relationship* with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source *with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)*. We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for

your condition(s).

(20 C.F.R. §§ 404.1502, 416.902).

Latimer's relationship with Reid was insufficient to consider Reid a treating source. Two examinations within five days of each other amounts to nothing more than a one-time treatment, which is not consistent with "accepted medical practice" for treating psychological problems that, as Latimer's records reflect, tend to be long-term. Judge Carnes was, therefore, under no obligation to refer to Reid specifically, to assign any presumptive weight to his opinions or reveal what weight was actually given.[16] *See* ***McSwain v. Bowen***, 814 F.2d 617, 619 (11th Cir. 1987) (stating that one-time examiners were not treating physicians); ***Vazquez v. Sec'y of Health and Human Svcs.***, 45 F.3d 424 (1st Cir. 1995) (declining to treat

---

[16] Judge Carnes discussed the records from Latimer's hospitalization, including Reid's assessments and diagnoses. But, he did not mention Reid's initial Global Assessment of Functioning ["GAF"] of 35. (R. 304). Nor did he note that two weeks prior to her visits with Reid, "one of [Latimer's] mental health providers [at ACT] estimated her [GAF] at 50." (Doc. # 20, p. 12; R. 224). Latimer finds these oversights material. (Doc. # 20, pp. 12-13).

Judge Carnes is not required to mention every finding on every page of Latimer's records, and his failure to cite a specific finding "does not indicate that such evidence was not considered." ***McCray v. Massanari***, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) (quoting ***Black v. Apfel***, 143 F.3d 383, 386 (8th Cir. 1998). Notably, Judge Carnes did refer to Reid's discharge GAF of 45. (R. 304).

A GAF score, moreover, offers only limited guidance for the purpose of making a disability determination. A patient with a GAF of between 41 and 50 evidences either "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning . . ." (emphasis in original). DSM-VI, at 32 ("The GAF rating is within a particular decile if **either** the symptom severity **or** the level of functioning falls within the range." (emphasis in original)). Thus, someone experiencing "suicidal ideations," which is considered a serious symptom for GAF purposes, would qualify for a GAF score of between 41 and 50 regardless of the person's social impairments. Consequently, a score without an explanation of the basis therefor, is virtually useless to a reviewer.

The GAF suffers yet another flaw. "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care." DSM-VI, at 33. Latimer's examiners did not indicate whether the scores extended beyond the current period. (R. 224, 600, 602). The assessments were made within a two-week period of obvious difficulty for Latimer. But Latimer has failed to persuade the court that the scores are indicative of her ability to function in a work setting before or beyond that time. *See*, ***Walker v. Apfel***, No. Civ.A. 98-1201, 2000 WL 724167, at *7 (S.D. Ala. May 16, 2000). Therefore, they are not deserving of special significance, and Judge Carnes did not err by not mentioning two of the three scores.

a claimant's physician as a treating source when the claimant had seen the physician only twice).

Judge Carnes' discussion of records relating to Latimer's hospitalization at West Memorial demonstrates that he considered all of the records, and his decision to leave out a reference to Reid or the weight assigned to Reid's opinion was legally proper and is supported by substantial evidence.

### 3. Testimony of the Medical Expert at the Rehearing

At the rehearing, Judge Carnes called Dr. Doug McKeown ["McKeown"] to testify regarding Latimer's mental residual functional capacity. At the time of his testimony, McKeown had reviewed all of Latimer's medical records but had not examined her. (Doc. # 20, p. 13). Judge Carnes nonetheless gave "great weight to [McKeown's] . . . testimony and opinion regarding the claimant's mental impairment and mental functional capacities." (R. 310). Latimer argues that McKeown's opinion was entitled only to "little weight" because it was "contradicted by the two examining psychiatrists," referring to Lopez and Reid. (Doc. # 20, p. 14).

As a general matter, a nonexamining medical expert's opinion cannot alone form the basis for an administrative decision. *See*, *e.g.*, **Broughton v. Heckler**, 776 F.2d 960, 962 (11th Cir. 1985). Furthermore, such an opinion is entitled only to little weight when it conflicts with the opinion of an examining medical source whose opinion has not been

properly discounted. *Id.*[17] Conversely, an ALJ is entitled to give greater weight to the opinion of a nonexamining medical expert when the opinion is supported by substantial evidence and the opinion of the examining source has been properly discounted. *See Crawford,* 363 F.3d at 1158-60 (see *supra* note 18); *Edwards*, 937 F.2d at 584-85.[18]

The court has already held that the ALJ properly discounted Lopez' opinion. No other examining physician offered an opinion with respect to Latimer's functional limitations. Therefore, if McKeown's testimony is supported by substantial evidence, the ALJ did not err by according it great weight.

A close review of the full record leads the court to conclude that McKeown's reasoned testimony, as well as Judge Carnes' decision to accord it great weight, is supported by substantial evidence. In fact, McKeown provided an interpretation of the record itself, paying particular attention to the consultative report provided by Latimer's treating

---

[17] Latimer cites only *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990), which dealt primarily with the ALJ's credibility determination. *Id.* at 223-24. In the cited footnote, the Eleventh Circuit stated, "Because Dr. Hibbett did not examine Ms. Swindle, his opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Id.* at 226 n.3 (quoting *Broughton*, 776 at 962). Out of context, the quoted statement conflates the principles espoused by the *Broughton* court and suggests that a nonexamining medical source's opinion is never entitled to anything more than little weight. That is not an accurate summary of *Broughton*'s holding, however, and implicit in the *Swindle* court's footnote is the recognition that the nonexamining physician's opinion was contrary to the medical evidence in the record. In the same footnote, the court stated that the nonexamining physician had failed to consider many of the claimant's symptoms of pain as reflected in the record. *Id.* Thus, the nonexamining expert's opinion was not supported by substantial evidence. This understanding resolves the apparent conflict separating the *Swindle* court's statement of law and the holding in more recent cases. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-60 (11th Cir. 2004) (finding that substantial evidence supported the ALJ's RFC determination, which was based upon the opinion of a nonexamining physician after discounting the opinion of all of the claimant's treating physicians); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (see *infra* note 19).

[18] *Edwards* is virtually on point with respect to the issue before the court. The court noted that the nonexamining expert "provided an interpretation of [the claimant's] condition vis-a-vis the limitations those conditions placed on Edwards' abilities. Because this information was not contained in either [examining physicians'] reports, we cannot say that [the nonexamining report] contradicted their findings. Consequently, the ALJ did not err in relying on her report." *Edwards*, 937 F.2d at 585.

physician, Lopez.  He based his testimony on the pertinent diagnoses as well as the observations recorded by Latimer's therapists, which, as a whole, support McKeown's conclusions.  Importantly, Latimer does not challenge the substance of McKeown's testimony or Judge Carnes' determination of her RFC.[19]

## IV. CONCLUSION

Therefore, for the reasons discussed herein, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

Done this 29th day of April, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

---

[19] Latimer contends that McKeown's testimony is not to be trusted because he was unable to recall the specifics of Anayas' opinion. (Doc. # 20, p. 14).  After reviewing Anayas' records again, however, McKeown's opinion did not change because nothing in the record supported Anayas' diagnosis of schizophrenia, on which Anayas' opinion had been based. (R. 398).